IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>LLOYD MCNEELY,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  1:16CV7DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff American National Property and Casualty Co.'s Motion for Summary Judgment [Docket No. 16], and Defendant Lloyd McNeely's Motion for Summary Judgment [Docket No. 18].  On October 26, 2016, the court held a hearing on the motions.  At the hearing, Plaintiff American National was represented by A.J. Sano and Defendant McNeely was represented by Brian C. Stewart and Mark R. Taylor.  The court took the motions under advisement.  The court has carefully considered the materials submitted by the parties and the facts and law relevant to the motions.  Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

On January 18, 2007, Lloyd McNeely and his wife, Joyce Wiley, obtained automobile insurance through American National Property and Casualty Company with selected bodily injury liability limits of $100,000 per person, $300,00 each accident.  During the application

process, McNeely and Wiley were presented with a form entitled "Coverage Options Section/Rejection Form - Utah."  The 2007 Selection/Rejection Form sets forth various coverage options concerning Personal Injury Protection ("PIP"), Uninsured Motorist Bodily Injury Coverage ("UM"), Underinsured Motorist Coverage ("UIM"), and Uninsured Motorist Property Damage Coverage ("UMPD").

With respect to UIM, American National's 2007 Selection/Rejection Form stated, in relevant part, that UIM "provides you with additional insurance benefits if you or someone in your automobile suffers bodily injury because of an automobile accident caused by another party who is primarily at fault, but who does not have enough insurance to compensate for the injuries."  The form indicates that McNeely and Wiley selected UIM in amounts equal to their bodily injury liability limits of $100,000 per person, $300,000 each accident.

The automobile policy American National issued to McNeely and Wiley became effective January 28, 2007, and has been renewed every six months since.  Over the years, vehicles were added to or deleted from the Policy, but no change was ever made to the named insureds listed on the Policy or to the amount of bodily injury liability coverage.

Around January 2013, McNeely and Wiley, who are both retirees living on a fixed income, sought to reduce the amount of their insurance premiums.  McNeely testified that the cost of the Policy kept increasing so he talked to his agent about bringing the cost down.

On January 15, 2013, McNeely met with his insurance agent and decided to have UIM and UM removed from the Policy.  To do this, McNeely signed a form entitled "Coverage Options Selection/Rejection Form – Utah" ("2013 Selection/Rejection Form").  The 2013 Selection/Rejection Form reads, in relevant part:

**Underinsured Motorist Bodily Injury Coverage (Automobile and Motorcycles)**

The following Underinsured Motorist Bodily Injury limits are available under your ANPAC insurance policy.  Additionally, if you prefer, you have the option of rejecting Underinsured Motorist Bodily Injury Coverage completely by checking the appropriate box below.

**Underinsured Motorist Bodily Injury (UIM)** coverage protects an insured person from bodily injury caused by a liable motorist who is insured under a bodily injury liability bond or policy at the time of the accident with limits of liability for bodily injury:

> a.  which are less than the amount of the damages of the insured person; or
>
> b.  that have been reduced by payments to persons other than the insured to less that the amount of the damages of the insured person.

Under the 2013 Selection/Rejection Form, three coverage options are listed.  Option A provides UIM equal to the bodily injury limits provided under the Policy.  Option B rejects UIM equal to the bodily injury limits but allows for the selection of lower UIM limits.  And Option C rejects UIM coverage in its entirety.  McNeely selected Option C and checked a box which states: "I **do not** desire to purchase Underinsured Motorist Bodily Injury Coverage."  He then signed the 2013 Selection/Rejection Form.

Approximately eight months later, on August 13, 2013, McNeely was involved in an automobile accident with an underinsured motorist. On May 14, 2015, McNeely's counsel sent a letter to American National stating that McNeely had settled his liability claim against the underinsured motorist for the policy limit of $100,000, and demanding that American National pay $100,000 in UIM coverage under McNeely's Policy.  On November 30, 2015, American National took examinations under oath of McNeely and Wiley concerning the facts and circumstances underlying their rejection of UIM coverage.

On January 20, 2016, American National sent a letter to McNeely's counsel confirming that McNeely's claim for UIM benefits had been denied based on the 2013 Selection/Rejection Form.  American National then filed this declaratory judgment action seeking a determination on the UIM coverage claim.

## STATUTORY BACKGROUND

In 2000, the Utah Legislature amended Utah's insurance code in an effort to make the presumptive limits of uninsured motorist and UIM coverage the same as the insured's liability limits, effective January 1, 2001.  Therefore, in 2007 when McNeely and Wiley obtained their Policy from American National, Utah's insurance code provision regarding UIM coverage provided:

> (f)(i) A named insured may reject underinsured motorist coverage by an express writing to the insurer that provides liability coverage under Subsection 31A-22-302(1)(a).
>
> (ii) This written rejection shall be on a form provided by the insurer that includes a reasonable explanation of the purpose of underinsured motorist coverage and when it would be applicable.
>
> (iii) This rejection continues for that issuer of the liability coverage until the insured in writing requests underinsured motorist coverage from that liability insurer.

Utah Code Ann. § 31A-22-305(9)(f) (2001).

In 2012, however, the Utah Legislature amended the UIM statute.  The 2012 Amendments combined the rejection and waiver requirements into one subsection and provided, in relevant part:

> (3)(a) For new policies written on or after January 1, 2001, the limits of underinsured motorist coverage shall be equal to the lesser of the limits of the named insured's motor vehicle liability coverage or the maximum underinsured motorist coverage limits available by the insurer under the named insured's motor vehicle

4

policy, unless a named insured rejects or purchases coverage in a lesser amount by signing an acknowledgment form that:

> (i) is filed with the department;
>
> (ii) is provided by the insurer;
>
> (iii) waives the higher coverage;
>
> (iv) reasonable explains the purpose of [UIM] coverage; and
>
> (v) discloses the additional premiums required to purchase [UIM] coverage with limits equal to the lesser of the limits of the named insured's motor vehicle liability coverage or the maximum [UIM] coverage limits available by the insurer under the named insured's motor vehicle policy.

Utah Code Ann. § 31A-22-305.3(3) (2012).

The 2012 Amendments also defined the term "new policy" to mean "(I) any policy that is issued which does not include a renewal or reinstatement of an existing policy; or (ii) a change to an existing policy that results in: (A) a named insured being added to or deleted from the policy; or (B) a change in the limits of the named insured's motor vehicle coverage." *Id.* § 31A-22-305.3(3)(b).  In addition, the 2012 Amendments made the definition of "new policy" retroactive:

> (E) (i) Subsection (3)(b) applies retroactively to any claim arising on or after January 1, 2001, for which, as of May 1, 2012, an insured has not made a written demand for arbitration or filed a complaint in a court of competent jurisdiction.
>
> (ii) The Legislature finds that the retroactive application of Subsection (3):
>
>> (A) does not enlarge, eliminate, or destroy vested rights; and
>>
>> (B) clarifies legislative intent.

Utah Code Ann. § 31A-22-305.3(3)(e) (2012).

5

**DISCUSSION**

**Cross Motions for Summary Judgment**

The parties agree that there are no disputed issues of material fact and summary judgment is appropriate.  The cross motions for summary judgment present only a legal question regarding statutory interpretation.  Specifically, the parties disagree as to whether Utah law required American National to satisfy the consumer notification requirements for a "new policy" under the UIM Statute when McNeely asked to have UIM coverage removed from his Policy.

Under the 2000 Amendments to the UIM Statute, anyone purchasing a "new policy" on or after January 1, 2001, could select UIM coverage with limits equal to their policy's liability coverage, in an amount less than their liability coverage, or reject UIM coverage in its entirety. These were the options when McNeely obtained insurance in 2007, and the parties agree that American National met the requirements in place at that time.

However, when McNeely removed UIM coverage from the Policy on January 15, 2013, the "new policy" requirements in the UIM Statute read as follows:

(3)(a) For new policies written on or after January 1, 2001, the limits of underinsured motorist coverage shall be equal to the lesser of the limits of the insured's motor vehicle liability coverage or the maximum underinsured motorist coverage limits available by the insurer under the insured's motor vehicle policy, unless a named insured rejects or purchases coverage in a lesser amount by signing an acknowledgment form that:

   (i) is filed with the department;

   (ii) is provided by the insurer;

   (iii) waives the higher coverage;

   (iv) reasonably explains the purpose of underinsured motorist coverage; and

   (v) discloses the additional premiums required to purchase

6

> underinsured motorist coverage with limits equal to the lesser of
> the limits of the named insured's motor vehicle liability coverage
> or the maximum underinsured motorist coverage liability available
> by the insurer under the named insured's motor vehicle policy.

Utah Code Ann. § 31A-22-305.3(3)(a) (2014).

The parties disagree as to whether American National was required to follow these "new policy" requirements when McNeely requested that UIM coverage be removed from his Policy. In *Iverson v. State Farm Mutual Ins. Co.*, 2011 UT 34, 256 P.3d 222 (Utah 2011), the court discussed what constituted a new policy under the UIM Statute. The Iversons had automobile insurance with State Farm for twenty-four years, had UIM coverage in an amount less than their liability limits, and never executed a waiver for having UIM in an amount less than their liability coverage. *Id.* at 223. In 2005, the Iversons were killed in an accident with an underinsured motorist, and their estate argued that State Farm was required to obtain a written waiver in accordance with the UIM statute before it could provide UIM coverage in an amount less than the liability limits. *Id.* at 224. State Farm argued that it had not issued a new policy to the Iversons after 2001. The court found that the statutory term "new policy" was ambiguous and that a reasonable definition would include an existing policy if the policy's terms had changed in a material way. *Id.* at 226-28. The court explained that a material change is one that would "meaningfully alter the risk relationship between the insurer and the insured." *Id.* at 228. If such a material change had occurred, the new policy requirements of the UIM Statute would apply. *Id.* at 227.

In response to *Iverson*, the Utah Legislature amended the UIM Statute in 2012 to specifically define the term "new policy." Under the 2012 Amendments, a new policy includes (1) any policy that is not a renewal or reinstatement of an existing policy or (2) "a change to an

existing policy that results in a named insured being added or deleted from the policy or a change in the limits of the named insured's motor vehicle liability coverage."  Utah Code Ann. § 31A-22-305.3 (2012).

In this case, the 2013 Selection/Rejection Form that McNeely signed to reject the UIM coverage admittedly did not include all of the information that would have been required to satisfy the "new policy" requirements from the 2012 Amendments to the UIM Statute. Nonetheless, American National argues that McNeely's removal of UIM coverage did not create a new policy because the policy was an existing policy at the time and McNeeley's request did not change the named insureds or the amount of bodily injury liability coverage.  In contrast, McNeely asserts that Subsection 3(b)(i) applies to new policies and Subsection 3(b)(ii) applies to policies entered into before 2001.

However, there is nothing in Subsection 3(b)'s definition of "new policy" that makes Subsection 3(b)(i) apply to new policies and Subsection 3(b)(ii) apply to old policies entered into before 2001.  There is simply no textual support for that position and such a construction would actually drastically reduce the number of insureds who received the consumer notification information.  If the Legislature had intended to require insurers to satisfy the "new policy" requirements of Subsection 3(a) whenever an insured makes a change to his or her UIM coverage, it could have provided for such in Subsection 3(b)(ii) as it did for changes of named insureds and changes of liability limits.  It did not include such language.

Furthermore, other sections of the UIM Statute provide that when an insured requests a change to his or her existing UIM coverage, the request need only be in writing.  In 2013, the Utah Legislature amended to UIM Statute to state that "[a]ny selection or rejection under Subsection (3)(a) continues for that issuer of the liability coverage until the insured requests, in

writing, a change of underinsured motorist coverage from that liability insurer."  Utah Code Ann. § 31A-22-305.3(b) (2014).  Prior versions of the UIM Statute similarly specified that any waiver of higher coverage or rejection of UIM would continue until the insured "in writing" requested a change.  *See e.g.*, Utah Code Ann. § 31A-22-305.3(2)(e) (2007) ("The acknowledgment under Subsection (2)(b) continues for the issuer of the underinsured motorist coverage until the insured, in writing, requests different underinsured motorist coverage from the insurer."); *id.* § 31A-22-305.3(g)(iii) (2007) ("This rejection continues for that issuer of the liability coverage until the insured in writing requests underinsured motorist coverage from that liability insurer.")  Whereas changes to UIM coverage are specifically addressed in their own statutory provisions and only require that the requested change be made in writing, only changes to the named insureds and/or changes to liability limits constitute a "new policy" and require the insurer to meet the new policy consumer notification requirements.

Although it is clear that McNeeley's request to change his UIM coverage amounts does not constitute a new policy under Subsection 3(b)(ii), whether his request for a change in UIM coverage constitutes a new policy under the definition in Subsection 3(b)(i) is less clear. Subsection 3(b)(i) defines a new policy as any policy that is not a renewal or reinstatement of an existing policy.  The definition of "new policy" in the 2012 Amendments was made retroactively applicable to all "new" policies entered after 2001.  The parties agree that Subsection 3(a) applied to McNeely's Policy when it was issued in 2007 and that American National complied with the requirements in place at that time.  The dispute is whether American National had to comply with the 2012 Amendments when McNeely came in to remove his UIM coverage in 2013.

In 2013, McNeely's Policy was six years old and had been continuously renewed since

2007.  American National asserts that such a policy cannot be considered a new policy under Subsection 3(b)(i).  However, McNeely contends that from its inception in January 2007, his Policy met the statutory definition of a new policy because it was issued after January 1, 2001, and at the time it was issued it was not a renewal or reinstatement of an existing policy. McNeely argues that the requirements of Subsection 3(a) of the UIM Statute have applied to the Policy since the time it was written in 2007 and have mandated that absent a qualifying rejection/acknowledgment form, the UIM coverage on the Policy shall be equal to the policy's liability coverage. McNeely argues that when American National presented McNeely with the 2013 Selection/Rejection Form it needed to comply with the 2012 Amendments.

McNeely relies on language from *Iverson*, stating that "a court must first determine whether a "new policy" existed on or after January 1, 2001, before it can ascertain whether an insurer has complied with the UIM Statute . . . . the language of both the 2000 and more recent versions of the UIM Statute is clear; insurance policies existing before January 1, 2001, trigger different UIM coverage notification requirements than do policies written on or after that date." 2011 UT 34 ¶ 12, 256 P.3d 222, 225.  However, this language is not particularly helpful to the specific issue before the court because *Iverson* was decided before the 2012 Amendments to the UIM Statute created the definition of a "new policy."  In fact, the 2012 Amendments were partly a response to *Iverson*.

While McNeely argues that any change to his Policy brings his Policy within Subsection 3(b)(i), the UIM Statute only requires that a change in UIM coverage be done in writing.  The retroactive definition of new policy complicates the analysis, but the Legislature did not include a change in UIM coverage as a triggering event for providing consumer notification information. The retroactive definition of new policy was not accompanied by mechanisms or procedures

requiring an insurer to notify all existing policyholders of the amendments.  The notifications only occurred when certain changes occurred.  And, the only changes to a policy that triggered the notification requirements are a change to the named insured or a change in liability coverage limits.

The court concludes that McNeely did not have a "new policy" when he requested to have UIM coverage removed.  At that time, under the UIM Statute, McNeely only needed to request a change in writing to change his UIM coverage.  This requested change did not constitute the issuance of a new policy.

In this case, McNeely requested, in writing, that UIM coverage be removed from his Policy.  Nothing in the plain language of the UIM Statute required anything more than the request be in writing.  A change in UIM coverage is not addressed in the provisions defining a new policy.  Therefore, McNeely's removal of UIM coverage did not constitute a new policy under the UIM Statute and the consumer notification requirements associated with a new policy did not apply to McNeely's situation.  The court finds no basis for requiring American National to provide UIM coverage to McNeely in the amount of his liability coverage after he expressly declined such coverage.

### CONCLUSION

Based on the above reasoning, Plaintiff American National Property and Casualty Co.'s Motion for Summary Judgment [Docket No. 16] is GRANTED, and Defendant Lloyd McNeely's Motion for Summary Judgment [Docket No. 18] is DENIED.

DATED this 16th day of November, 2016.

DALE A. KIMBALL
United States District Judge

11